DUFRESNE, Judge.
This appeal involves an action for damages arising out of alleged legal malpractice. Plaintiff, Rita Nell Treadway Curtis filed suit against her attorney, Nathan Greenberg who acted as attorney and notary for both vendor and vendee of immovable property, improvements thereon and business known as Lafitte Shipyard and Marine Supply.
On September 4, 1979, Curtis sold the shipyard to Eymard Shipyard of Lafitte, Inc., by Act of Credit Sale passed by Greenberg as notary.
The act of sale was properly recorded in Mortgage and Conveyance offices of Jefferson Parish, however the documents prepared by Greenberg failed to contain a chattel mortgage.
Eymard failed to pay the 1983 annual installment on the credit portion of the sale, consequently Curtis instituted proceedings to protect her interest. On January 5,1984, Curtis filed a Petition for Exec-utory Process in the 24th Judicial District Court seeking enforcement of the provisions of the note and mortgage in the Act of Credit Sale. The property sought in the seizure was for immovable property.
On May 10, 1985, Curtis executed an agreement to sell with Robert Boudreaux, that property known as Lafitte Shipyard, no specific reference made to either movables, immovables, or both. The act of sale was passed on August 9, 1985, however due to alleged defects in the original Act of Credit Sale on September 4, 1979, the transfer of the movables could not be perfected. Curtis contends this was the first instance she became aware that she did not have a valid and enforceable security interest in the movables.
On August 4, 1986, Curtis filed this lawsuit against Greenberg seeking damages for her sustained as a result of the defects in the September 4, 1979 Act of Credit Sale prepared by him.
Curtis alleges that Greenberg failed to itemize or identify the movable property conveyed in the 1979 sale from Curtis to Eymard, additionally failed to secure a lien or mortgage on same by recordation. Curtis was prohibited from seizing upon nor acquiring title to said movables in her foreclosure action, thus Curtis was denied the right to convey and transfer said movables to Boudreaux.
*503 On September 3, 1986, Greenberg filed an exception of liberative prescription of one year as a defense to Curtis’ tort suit. Shortly thereafter Greenberg filed an exception of no cause of action to Curtis’ breach of warranty allegation.
On May 14,1991, the trial court rendered and signed a judgment maintaining the exceptions of prescription and no cause of action. From this judgment Curtis has appealed. The issue presented us is whether Curtis’ claim for professional negligence had prescribed.
There is no dispute that an action for legal malpractice based in tort prescribes in one year from the date of the injury or from the date the injury is known or should have been known. The issue in this case is when does the year begin to run.
Curtis contends she did not know of her problem (e.e. injury) with the movables of Lafitte Shipyard until August 9, 1985, when she was prevented from selling these movables to Boudreaux. Curtis argues that her cause of action does not arise (and, consequently, prescription does not begin to run) until she sustained some loss as a result of the alleged wrongful act. Rayne State Bank & Trust Co. v. National Union Fire Ins. Co., 438 So.2d 987 (La.1986). Curtis argues that Rayne rationale equates to an accrual of her cause of action when she could not sell the movables on August 9, 1985; accordingly, her cause of action had not prescribed when she filed suit on August 4, 1986.
However, the Rayne decision teaches us that:
“... in order that prescription should run, it is not required that the loss should have been already suffered, but only that the fact that it is going to be suffered, or is sure to result, should be sufficiently certain to serve as a basis for a claim of damages in tort.”
To the same effect is the Supreme Court’s decision in Cartwright v. Chrysler Corp., 232 So.2d 285 (La.1970), which adopted a rationale of constructive notice as opposed to actual notice of knowledge of one’s claim:
“Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running [of] prescription.”
Curtis must show that she did not know of the facts upon which she bases her claim but also that she had no reason to know or discover same. Furthermore, Curtis must establish that her lack of knowledge was not attributable to her fault.
When Curtis retained an attorney, (Peter J. Castaño) he filed a verified Petition for Executory Process requesting seizure of the property sold to Eymard. When Curtis executed the affidavit on November 22, 1983, verifying that she read the petition and that all of the allegations were true and correct, at that point, Curtis knew or should have discovered the lack of reference to movables.
Curtis attended the Sheriff’s sale and purchased the seized property, for which she received a Sheriff’s Process Verbal Deed advising her what she had purchased. Again, a review of the Sheriff’s Deed would disclose the lack of reference to movables.
We find reason to affirm the trial court’s decision after careful examination of testimony of Jacob Amato and his secretary, Debbie Naquin. Amato testified as to awareness of the title problems over the movables upon examining the title abstract. This caused an extension to the purchase agreement which all parties signed on either July 22 or 23, 1985, in order to provide time for curative work. There were no other problems to be cured prior to passing the sale except title to the movables.
Amato indicated his awareness to the movables problem in mid-July, 1985, and that the problem was explained to Curtis no later than July 23, 1985.
Finally, Mr. Amato’s secretary, Debbie Naquin, who prepared the various doc *504 uments involved in the sale, testified that she prepared the extension agreement and personally spoke to Curtis to tell her of the problem over the movables about two weeks prior to the August 9, 1985 sale.
We find that Curtis had the requisite knowledge concerning the movables at some point during the executory process proceedings, which began in January, 1984, more than one year prior to her filing this tort suit.
Although there is some conflicting testimony, it is the trial court’s function to sift through the evidence and decide which will be accepted, rejected and accorded what weight. We hold, that the trial court had sufficient evidentiary basis to conclude that Curtis’ legal malpractice action had prescribed. These reasonable factual conclusions will not be disturbed, as we find no abuse of discretion. Rosell v. Esco, 549 So.2d 840 (La.1989).
Accordingly, the reasons assigned the trial court’s decision is affirmed.
AFFIRMED.